United States District Court
For the Northern District of California

1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7

8    INJAZAT TECHNOLOGY FUND, B.S.C.,

9          Petitioner,                          No. C 11-4133 PJH

10         v.                                    **ORDER GRANTING PETITION TO
                                                 CONFIRM ARBITRATION AWARD**
11   HAMID NAJAFI,

12         Respondent.
     _____/
13

14         Before the court is the petition of Injazat Technology Fund, B.S.C. ("Injazat") for an

15   order confirming a foreign arbitration award issued against respondent Hamid Najafi

16   ("Najafi"), and Najafi's motion for a stay of enforcement.  Having read the parties' papers

17   and carefully considered their arguments, and also having read the report and

18   recommendation issued by Magistrate Judge Howard R. Lloyd on March 9, 2012, and good

19   cause appearing, the court hereby ADOPTS the report and recommendation, GRANTS the

20   petition, and DENIES the motion for stay of enforcement.

21                                   **BACKGROUND**

22         In September 2006, Injazat, Najafi, and Michael Commiskey ("Commiskey"), entered

23   into a written investment agreement, or Share Subscription Agreement ("SSA"), with

24   Broadlink Research FZ LLC ("Broadlink").  Broadlink is incorporated under the laws of the

25   Emirate of Dubai (part of the United Arab Emirates or "UAE").  Najafi was the CEO of

26   Broadlink.  Pursuant to the SSA, Injazat agreed to pay $3 million (U.S.) for the equivalent of

27   35% of the shares of Broadlink.

28         The SSA contained a binding arbitration provision, requiring that any dispute arising

1  out of the agreement be arbitrated in accordance with "the English law, without respect to

2  the conflict of law provisions thereof[,]" in London, UK.  The SSA defined the arbitration

3  rules as the Rules of Arbitration of the International Chambers of Commerce (the "ICC").

4       A dispute arose between Injazat and Najafi/Commiskey regarding certain statements

5  allegedly made by Najafi prior to the execution of the contract, regarding the non-existence

6  of any liabilities on the part of Broadlink, and other representations and/or alleged breaches

7  of contract.  Pursuant to the SSA, the parties chose an English barrister, James Evans, to

8  arbitrate the claims.

9       The final hearing took place on January 31-February 2, 2011, in London.  On July

10  25, 2011, Arbitrator Evans issued a 75-page final award, finding that Najafi and Commiskey

11  were jointly liable to Injazat for the value of Injazat's investment, and were also liable to pay

12  interest on the value of the investment, plus costs of arbitration and Injazat's legal fees

13  incurred in connection with the arbitration.

14       In August 2011, Injazat filed the present petition to confirm the award under the

15  Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York

16  Convention").  During this same period, Injazat filed two other petitions to confirm the

17  arbitration award – one in the District of Nevada on August 22, 2011 (petition granted

18  October 17, 2011, motion for default judgment granted November 10, 2011); and one in the

19  Northern District of Georgia on September 2, 2011 (petition granted and motion for default

20  judgment granted, both on February 3, 2012).  On February 24, 2012, Injazat registered the

21  judgment issued by the District of Nevada in this district.

22       The present case was initially assigned to Magistrate Judge Lloyd.  No one

23  appeared for either respondent, and on January 6, 2012, Injazat filed a notice of voluntary

24  dismissal of Commiskey.  On January 20, 2012, Judge Lloyd signed Injazat's proposed

25  order confirming the arbitration award.  Najafi subsequently appeared by counsel, and filed

26  a motion to stay execution of judgment.  With the motion, he filed a declaration stating that

27  on August 18, 2011, Injazat had obtained a travel ban through the courts of the UAE, which

28  prohibited him from leaving the UAE from August 8, 2011 through January 18, 2012.     On

United States District Court
For the Northern District of California

1   March 9, 2012, based on the lack of consent by Najafi to the jurisdiction of the Magistrate

2   Judge, Judge Lloyd issued an order vacating the order confirming the arbitration award and

3   reassigning the case to a district judge, and also issued a report recommending that the

4   petition be granted ("the R&R").  In the R&R, Judge Lloyd found that the court had

5   jurisdiction over Najafi based on the fact that he owns real property in this district – one

6   property in Los Altos Hills (Santa Clara County) and one property in Petaluma (Sonoma

7   County).  See R&R at 3.

8       The case was reassigned to the undersigned on March 13, 2012.  The court set a

9   briefing schedule for Najafi to file an opposition to the petition and Injazat to file a reply, and

10  also stated that the R&R would be considered in conjunction with the petition.  The court

11  found as moot the pending motion to stay enforcement of the judgment.

12      On March 30, 2012, the date the opposition to the petition was due, Najafi filed a

13  motion to stay confirmation of the award pending a ruling on a second international

14  arbitration, which he had filed on that same date before the ICC in London.  Najafi appears

15  to have conceded that he has no basis to oppose the petition under any of the grounds

16  recognized by the New York Convention or the Federal Arbitration Act ("FAA").  He asserts,

17  however, that because this newest arbitration arises out of the same transactions and facts

18  as the arbitration that is the subject of the present petition, a confirmation of that award

19  would be "premature" based on the existence of the "related" arbitration, and that

20  confirming this award now would be to risk the possibility of "inconsistent results."

**DISCUSSION**

21

22  A.   Legal Standards

23       1.   Confirmation of arbitration awards

24      Arbitration agreements are intended to make arbitration decisions binding and

25  enforceable and to limit how parties may challenge them.  See Volt Information Sciences v.

26  Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989).  The burden

27  of proof in a proceeding to confirm an arbitration award is on the party defending against

28  enforcement.  See Imperial Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334, 336 (5th

**United States District Court**

For the Northern District of California

1   Cir.1976); <u>Empresa Constructora Contex Limitada v. Iseki</u>, 106 F.Supp. 2d 1020, 1024

2   (S.D. Cal. 2000).

3       "Confirmation is a summary proceeding that converts a final arbitration award into a

4   judgment of the court." <u>See</u> <u>Ministry of Defense and Support for the Armed Forces of the</u>

5   <u>Islamic Republic of Iran v. Cubic Defense Sys., Inc.</u>, 665 F.3d 1091, 1094 n.1 (9th Cir.

6   2011). Once an award is confirmed, it has the same force and effect as a judgment in a

7   civil action, and may be enforced by any means available to enforce civil judgments. <u>Id.</u>

8       Confirmation of foreign arbitration awards is governed by the Convention on the

9   Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517,

10  known as the "New York Convention," and federal law implementing the Convention, 9

11  U.S.C. §§ 201-208. <u>Cubic Defense</u>, 665 F.3d at 1095; <u>see also</u> 9 U.S.C. § 201 (New York

12  Convention shall be enforced in U.S. courts in accordance with the FAA). The New York

13  Convention is intended "to encourage the recognition and enforcement of commercial

14  arbitration agreements in international contracts and to unify the standards by which

15  agreements to arbitrate are observed and arbitral awards are enforced in signatory

16  countries." <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 520 & n.15 (1974).

17      Under 9 U.S.C. § 207, within three years after an award falling under the New York

18  Convention is made, "any party to the arbitration may apply to any court having jurisdiction

19  under this chapter for an order confirming the award as against any other party to the

20  arbitration. The court shall confirm the award unless it finds one of the grounds for refusal

21  or deferral of recognition or enforcement of the award specified in the said Convention." 9

22  U.S.C. § 207.

23      A district court's review of a foreign arbitration award is quite circumscribed. <u>Ministry</u>

24  <u>of Defense of Islamic Republic of Iran v. Gould</u>, 969 F.2d 764, 770 (9th Cir. 1992). Absent

25  extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings.

26  <u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d 310, 315 (2nd Cir. 1998). The

27  seven grounds for refusing to confirm an award are set out in Article V of the New York

28  Convention. These defenses are construed narrowly, and the party opposing recognition

United States District Court

For the Northern District of California

1 or enforcement bears the burden of establishing that a defense applies. See Cubic

2 Defense, 665 F.3d at 1094-96.

3      2.     Stays pending resolution of parallel arbitration proceedings

4     Generally, the power to stay proceedings "is incidental to the power inherent in every

5 court to control the disposition of the cases on its docket with economy of time and effort

6 for itself, for counsel, and for litigants." Landis v. American Water Works & Elec. Co., 299

7 U.S. 248, 254-55 (1936).

8     In the context of an arbitration award, the court should apply a more "cautious and

9 prudent exercise of the power" to stay. Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101,

10 106 (1st Cir. 1995); see also Wartsila Finland OY v. Duke Capital LLC, 518 F.3d 287, 295

11 (5th Cir. 2008). A stay of confirmation should not be lightly granted, because a central

12 purpose of the New York Convention was to expedite the recognition of foreign arbitral

13 awards with a minimum of judicial interference. Berg, 61 F.3d at 106).

14 B.     Injazat's Petition and Najafi's Motion for Stay of Confirmation

15     In this case, the New York Convention applies because the ICC Award was obtained

16 in the UK. Injazat argues that the award should be confirmed because no application to

17 modify or correct the award has been filed, and none of the grounds for refusal or

18 enforcement specified in the New York Convention apply here.

19     A district court has little discretion under the New York Convention to reject an

20 award, unless the respondent provides evidence to support one of the defenses set forth in

21 Article V of the New York Convention. Article V lists the reasons why "[r]ecognition and

22 enforcement of the award may be refused."

23

24     1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof

25     that:

26     (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid

27     under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

28

United States District Court
For the Northern District of California

1    (b) The party against whom the award is invoked was not given proper notice
2    of the appointment of the arbitrator or of the arbitration proceedings or was
     otherwise unable to present his case; or

3    (c) The award deals with a difference not contemplated by or not falling within
     the terms of the submission to arbitration, or it contains decisions on matters
4    beyond the scope of the submission to arbitration, provided that, if the
     decisions on matters submitted to arbitration can be separated from those not
5    so submitted, that part of the award which contains decisions on matters
     submitted to arbitration may be recognized and enforced; or
6
     (d) The composition of the arbitral authority or the arbitral procedure was not
7    in accordance with the agreement of the parties, or, failing such agreement,
     was not in accordance with the law of the country where the arbitration took
8    place; or

9    (e) The award has not yet become binding on the parties, or has been set
     aside or suspended by a competent authority of the country in which, or under
10   the law of which, that award was made.

11   2. Recognition and enforcement of an arbitral award may also be refused if
     the competent authority in the country where recognition and enforcement is
12   sought finds that:

13   (a) The subject matter of the difference is not capable of settlement by
     arbitration under the law of that country; or
14
     (b) The recognition or enforcement of the award would be contrary to the
15   public policy of that country."

16   New York Convention, Art. V, quoted in Cubic Defense, 665 F.3d at 1096 n.2.

17        Here, Najafi has provided no "proof" as to any of these defenses, and in fact,

18   appears to concede that the has no defense to the confirmation of the award.  Thus, the

19   court finds, for the reasons stated in the March 9, 2012 R&R, the petition must be

20   GRANTED.

21        The only issue to be addressed is whether confirmation of the award should be

22   stayed pending resolution of the second arbitration.  There is nothing in the New York

23   Convention that allows or proscribes such a stay, and there is little authority or case law on

24   this issue.  In general, federal courts that have granted requests for stays of confirmation of

25   arbitration awards generally have done so only when the second proceeding involves

26   claims that could not have been brought by the respondent in the first proceeding, or when

27   the petitioner is insolvent.

28        For example, in Berg, the First Circuit vacated the district court's order confirming an

6

United States District Court

For the Northern District of California

1   arbitration award against Hewlett-Packard and remanded the case for a determination of

2   whether a stay of confirmation was warranted pending the outcome of a related arbitration

3   proceeding by HP against the petitioner.

4       The court based its decision on the fact that the petitioner was bankrupt, and that if

5   Hewlett-Packard prevailed on its claims, "it would have no assurance of collecting

6   anything[;]" and on the finding that Hewlett-Packard could not be blamed for "the

7   discrepant timing in the resolution of its claims" since it had "made a reasonable effort to

8   have both the defendants' claim and its own counterclaim resolved in one proceeding at

9   the same time" but was stopped from proceeding on the counterclaim only by the

10  arbitration panel which (incorrectly) held that the counterclaim was not arbitrable.  Id., 61

11  F.3d at 105.

12      "Under these circumstances," the court held, "the seemingly fair solution would be to

13  confirm the award in its uncontested part, reserving confirmation of the balance" until the

14  counterclaim was arbitrated.  Id.  However, while the court recognized the power of district

15  courts to stay confirmation proceedings, it also cautioned that "a stay of confirmation

16  should not be lightly granted [since] [a] central purpose of the [New York] Convention . . .

17  was to expedite the recognition of foreign arbitral awards with a minimum of judicial

18  interference."  Id. at 106.

19      In Wartsila, the Fifth Circuit affirmed the district court's denial of the respondent's

20  motion to stay enforcement of a foreign arbitration award pending the outcome of a related

21  proceeding.  The court noted that, even though the respondent had a pending arbitration

22  claim against the petitioner, unlike in Berg, the respondent had presented no evidence of

23  the petitioner's "insolvence or that [respondent] will have trouble recovering on its claim."

24  Id., 518 F.3d at 295.  Further, unlike in Berg, the court noted that respondent "unilaterally

25  withdrew its claims in order to reserve them for a later proceeding."  Id.  Under these

26  circumstances, the court held, the "prudential concerns" underlying the Berg court's

27  decision were not present, and the district court did not abuse its discretion in denying

28  respondent's motion for a stay.  Id.

7

United States District Court

For the Northern District of California

1    Other courts considering motions to stay confirmation of arbitration awards have

2    reached similar conclusions.  See, e.g., Korea Wheel Corp. v. JCA Corp., 2005 WL

3    34543335, at *2 (W.D. Wash. Dec. 16, 2005) (granting a stay of confirmation where

4    respondent's counterclaims were withdrawn at suggestion of the arbitration panel until the

5    evidence could be developed); Companhia de Navegacao Maritima Netumar v. Armada

6    Parcel Service, Ltd., 1997 WL 16663, at *7 (S.D.N.Y. Jan. 17, 1997) (granting stay of

7    enforcement pending related setoff claim where petitioner was bankrupt and where issues

8    underlying respondent's counterclaims had not been submitted to the arbitrators).

9    Here, Najafi argues that a stay of confirmation is appropriate because the Award

10   issued by the arbitrator in July 2011 will not be "complete" until the second arbitration is

11   resolved.  Najafi contends that under the case law cited by both parties, a stay would be

12   just.  Najafi also contends that because Injazat is winding up, he will have no assurance of

13   collecting anything once the award is issued in the second arbitration.  He notes that one of

14   the factors the court considered in Berg was that the party seeking confirmation was

15   winding up.  See Berg, 61 F.3d at 105.  He does not believe he should have to bear the

16   burden of identifying and establishing the identity of the appropriate "shell company" in

17   order to collect on the award from the second arbitration.

18   Najafi asserts further that he is properly pursuing his claims against Injazat in the

19   second arbitration.  He claims that the delay in filing the arbitration claims was totally

20   caused by Injazat's persuading the Government of Dubai to issue a travel ban, within three

21   weeks of the issuance of the Award, which prevented him from leaving Dubai.

22   The court finds that the petition to confirm the arbitration award must be GRANTED,

23   and the motion for a stay must be DENIED.  As an initial matter, the court reads the Ninth

24   Circuit's opinion in Cubic Defense as requiring that an arbitration award be confirmed

25   unless the respondent has provided proof supporting one of the defenses listed in Article V

26   of the Convention, which Najafi has not done here.

27   In addition, under the principles articulated in Wartsila and Berg, Najafi's request for

28   a stay of confirmation lacks merit.  Najafi has presented no evidence that Injazat is

United States District Court

For the Northern District of California

1    insolvent, and no evidence that he would be unable to collect on his counterclaims, should

2    he succeed, from Injazat or Injazat's successor in interest, should the fund wind up before

3    the counterclaims are due.  All he has done is point to a statement on a website page of

4    Injazat's parent company.  That is not evidence that Injazat is experiencing financial

5    difficulties.

6           Even more importantly, Najafi offers no explanation for why he did not raise his

7    counterclaims in the initial arbitration, and has not established that he moved promptly to

8    bring the claims against Injazat in a second arbitraiton.  Here, unlike in Berg, Najafi can be

9    blamed for the "discrepant timing" in the resolution of his claim.  He participated in the prior

10   arbitration, through counsel, which included the selection of the arbitrator.  He presumably

11   could easily have raised the claims against Injazat in the original arbitration, and in fact,

12   states that he did attempt to introduce some of the evidence, but claims that the arbitrator

13   would not accept it.  The fact that Najafi chose not to present his claims or that he chose

14   inexperienced counsel is insufficient justification for delaying enforcement of the arbitration

15   award.

16          Injazat filed its statement of claim with the ICC on June 10, 2010, setting forth its

17   claims against Najafi and Cummiskey.  Najafi attended the final hearing (on January 31,

18   2011), and was cross-examined at that time (along with a number of other witnesses).  Yet

19   it was not until March 30, 2012 – fourteen months after the conclusion of the arbitration

20   hearing – that Najafi filed the arbitration claim against Injazat (which he appears to concede

21   are in the nature of counterclaims).

22          Even assuming for the sake of argument that the travel ban imposed by the Emirate

23   of Dubai, from August 18, 2011 to January 12, 2012, precluded Najafi from filing his

24   arbitration claim against Injazat, he clearly had more than 14 months – from June 10, 2010

25   until August 18, 2011 – to file claims against Injazat.  And even if he waited for the issuance

26   of the Award before taking action, he had three weeks – from July 25, 2011 to August 18,

27   2011 – to file the second arbitration.  The fact that he evidently did not anticipate losing the

28   arbitration does not mean that the award should not be enforced.

**United States District Court**
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, the court GRANTS Injazat's petition to confirm the arbitration award issued by Arbitrator James Evans on July 25, 2011, in the matter of Injazat Technology Fund B.S.C. v. Najafi, et al., Case No. 15982/JEM/NKJ/ARP, and DENIES Najafi's motion to stay enforcement.

The arbitration award is confirmed as to Najafi under § 207 of the Federal Arbitration Act. Injazat is entitled to costs of suit herein. Upon confirmation of the award, entry of judgment is warranted, and such judgments are enforceable against Hamid Najafi's equity in the following properties, as more fully described in the March 9, 2012 report and recommendation:

- 26646 Altamont Road, Los Altos Hills, California 94022

- 6509 Lakeville Highway, Petaluma, California 94954.

If a separate judgment is required, Injazat shall submit a proposed form of judgment within seven days of the date of this order; or, alternatively, shall advise the court that nothing more is needed.

**IT IS SO ORDERED.**

Dated: May 1, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

10