UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INJAZAT TECHNOLOGY FUND B.S.C., <br><br> Judgment Creditor, <br><br> v. <br><br> DR. HAMID NAJAFI, <br><br> Judgment Debtor. | Case No. 11-cv-04133 PJH (NC) <br><br> **ORDER RE: MOTION TO ENFORCE JUDGMENT** <br><br> Re: Dkt. Nos. 86, 127 |

In this debt enforcement action, Injazat Technology Fund B.S.C. seeks to collect on a $3,426,552.45 final judgment against Hamid Najafi. To satisfy this judgment, Injazat asserts an interest in Najafi's stock options from his employer, InvenSense, as well as in the rental proceeds from Najafi's house in Los Altos Hills, California. The issues presented are: (1) whether the stock options are earnings, subject to garnishment, and if so, whether Injazat may garnish the options before or after taxes; and (2) whether Injazat is entitled to the proceeds of the rental of Najafi's house in Los Altos Hills. The Court concludes that the stock options are earnings and Injazat may garnish the value of any exercised options, after taxes and exemptions. Injazat is not entitled to the proceeds of the rental of Najafi's house in Los Altos Hills, as his former spouse's divorce decree awarded her support payments that must be given priority under California law.

# I. BACKGROUND

## A. The Parties

Judgment creditor Injazat Technology Fund B.S.C. is a Bahraini fixed term venture capital fund with its principal place of business in Dubai. Dkt. No. 1 at 5. Broadlink Research FZ LLC is a company incorporated in Dubai Silicon Oasis, existing under the laws of the United Arab Emirates. *Id.* Injazat is an investor in Broadlink. *Id.* Judgment debtor Najafi is the former chief executive officer of Broadlink and was most recently employed by InvenSense, Inc., which is not a party to the dispute. *Id.*

## B. The Arbitration

The underlying arbitration arose from damages incurred as a result of misrepresentations Najafi made to Injazat regarding its investment in Broadlink and breaches of the share subscription agreement by Najafi. *Id.* The share subscription agreement and shareholder agreement provided that Injazat and Najafi would submit all disputes between them to binding arbitration. *Id.* at 6. On June 10, 2010, Injazat filed a statement of claim with the International Chamber of Commerce. *Id.* Hearings were held in London, United Kingdom from January 31 to February 2, 2011. *Id.* On or about July 25, 2011, the ICC arbitrator issued an award resolving the dispute in favor of Injazat. *Id.* at 7. The ICC awarded Injazat damages of $3,426,552.45. Dkt. No. 86 at 2.

## C. The Enforcement Action

On August 23, 2011, Injazat filed a petition in the U.S. District Court to confirm the ICC's arbitration award. Dkt. No. 1. District Court Judge Phyllis J. Hamilton granted Injazat's petition, Dkt. No. 62, and entered a final judgment in favor of Injazat against Najafi in the amount of $3,426,552.45 on May 4, 2012. Dkt. No. 65. The judgment was ordered to be enforceable against Najafi's real property located at 26645 Altamont Road, Los Altos Hills, California 94022, and 6509 Lakeville Highway, Petaluma, California 94954. *Id.*

On October 2, 2012, judgment creditor Injazat filed a motion under Federal Rule of Civil Procedure 69 for (1) an order assigning to it the rights to judgment debtor Najafi's

income from rental property and stock shares granted by his employer, InvenSense; (2) a restraining order preventing Najafi from disposing of the rights to the rental income and the stock shares; and (3) an order turning over possession and evidence of title to the rental property, stock, and other assets.  Dkt. No. 86.

Najafi opposed this motion, arguing that: (1) Najafi's existing obligations to support himself, his family members, and his former spouse are so substantial that the court should not grant an assignment order; (2) that Najafi's stock grants from InvenSense may already be garnished; and (3) a restraining order would prevent Najafi from selling the Los Altos Hills property in order to pay down substantial outstanding debts and obligations.  Dkt. No. 87 at 2-3.

On November 8, 2012, the Court issued a tentative ruling on the motion to enforce the judgment and ordered the parties to address certain outstanding issues at the hearing.  Dkt. No. 92.  The Court held a hearing on November 14, 2012, and after hearing argument, determined that more information was needed about the status of Najafi's mortgage on the Los Altos Hills property, as well as the treatment of his stock options.  Dkt. No. 94.  On November 19, 2012, the Court issued an order setting a hearing for December 19, 2012, and ordering the parties to file a status update by December 12, 2012, with the necessary information about Najafi's finances.  Dkt. No. 95.  The order also prohibited Najafi from exercising any options in his stock without agreement of counsel and ordered all rental proceeds to be maintained in a client trust account.  *Id.*

After a continuation, the parties filed the status report on January 9, 2013.  Dkt. No. 99.  The parties reported that the appraised value of the Los Altos Hills property was $2,980,000.  *Id.* at 1.  The total value of the mortgages on the Los Altos Hills property was $2,530,000.  *Id.* at 2.  Najafi had applied for a loan modification from JP Morgan Chase, the senior mortgage holder on the Los Altos Hills property, which was pending at the time of the report.  *Id.* at 2-3.  The Court held a hearing on Injazat's motion to enforce its judgment on January 16, 2013.  Dkt. No. 103.  The Court ordered that its November 19 order would remain in effect, but ordered the parties to submit a status update regarding Najafi's stock

options. *Id.* Specifically, the parties were ordered to propose a process by which 25% of the value of any exercised stock options could be paid to Injazat, and assess the tax treatment of the stock. *Id.* The Court set a further hearing for February 13, 2013. *Id.* That hearing was continued first to March 6, 2013, by stipulation of the parties, and then to March 20, 2013. Dkt. No. 105, 107.

On March 20, 2013, the Court held another hearing. Dkt. No. 112. The issues that remained outstanding after the hearing were (1) whether Injazat was entitled to the rental proceeds from the Los Altos Hills property, and (2) how the stock options would be taxed. *Id.* The Court set a further hearing for May 1, 2013. *Id.* The parties stipulated to continue that hearing to June 5, 2013 and then to June 19, 2013 and then to July 10, 2013 in order to engage in settlement discussions. Dkt. Nos. 114, 116, 117.

On July 10, 2013, the Court held a hearing. Dkt. No. 122. By that time, Najafi had been approved for a modification of his mortgage on the Los Altos Hills property. The Court authorized the exercise of 2600 stock options, in order that Najafi could pay his mortgage for August and September. Dkt. No. 123. The Court set a further briefing schedule for the parties to address whether the stock options were considered "earnings" under California Civil Procedure Code § 706.011, such that they could be exempted from garnishment for Najafi's living expenses. *Id.* The Court also ordered Najafi to notify any other creditors who might have an interest in the rental proceeds that the proceeds were the subject of a motion for assignment by Injazat and could be assigned to satisfy in part the judgment. *Id.* Under this Court's November 19, 2012 Interim Order, Najafi had deposited $18,111 in proceeds from the rental of the Los Altos Hills property into a trust pending a further order determining their disposition in this proceeding.

Najafi was terminated from InvenSense on July 26, 2013. Dkt. No. 127 at 7. Najafi's stock options had to be exercised within forty-five days of termination. Dkt. No. 127-2 at 2.

The Court held a hearing on August 28, 2013, to hear further argument regarding whether Najafi's stock options should be treated as earnings. That same day, Mrs. Shahrzad Najafi, Najafi's former spouse, filed a notice of claim with the Court stating that Najafi

owes her $32,000 in unpaid alimony payments pursuant to their divorce decree, which was filed in the family division of the Second Judicial District Court of the State of Nevada, County of Washoe, on December 21, 2010.  Dkt. No. 135 at 3.  She declared that Najafi promised to pay her the $18,111 from the Los Altos Hills rental proceeds towards the unpaid alimony.  *Id.* at 3.

**D.   Jurisdiction**

The Court has subject matter jurisdiction over this dispute under 9 U.S.C. § 203.  District Judge Hamilton referred this action to this Court for post-judgment collections under Civil Local Rule 72-1.  See Dkt. No. 70.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 69 provides that with respect to a money judgment, the Court "must accord with the procedure of the state where the court is located."  Fed. R. Civ. P. 69.  California Code of Civil Procedure § 708.510 permits the Court to order a judgment debtor to assign to a judgment creditor wages due that are not already subject to withholding under an earnings withholding order, rents, commissions, royalties, payments due from a patent or copyright, or insurance policy loan value.  In determining whether to order assignment or the amount to assign, the court considers all relevant factors, including the reasonable requirements of the debtor and any persons he supports, payments the debtor is required to make, the amount due on the money judgment, and the amounts of the rights to payments.  *Id.* § 708.510(c).  Section 708.520 also permits the Court to issue a restraining order barring the judgment debtor from assigning or otherwise disposing of the right to payment sought to be assigned.  The court may issue such an order upon a showing of need.  *Id.* § 708.520(b).  Under California Civil Procedure Code § 699.040, a Court may issue a turnover order directing a judgment debtor to transfer to a levying officer possession of property or documentary evidence of title to property or debt owed.

Case No. 11-cv-04133 PJH (NC)
ORDER RE: MOTION TO ENFORCE JUDGMENT                     5

### III. DISCUSSION

**A.   Stock Options Are Earnings Under California Civil Procedure Code § 706.011.**

To satisfy a money judgment, a creditor may issue a withholding order to a debtor's employer to garnish the debtor's earnings. Cal. Civ. Proc. Code § 706.021. For the purposes of garnishment, California defines "earnings" as "compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonus, or otherwise." Cal. Civ. Proc. Code § 706.011(b). This definition "embraces all remuneration"; "[t]he infinite variety of forms which such compensation can take precludes a more precise statutory definition." Cal. Civ. Proc. Code § 706.011, 1982 Legislative Committee Comments. "Although there is no California case law that tells us specifically what counts as earnings under § 706.011, it is at least clear that a primary criterion is that the payments must be for 'personal services performed.'" *In re Carter*, 182 F.3d 1027, 1032-33 (9th Cir. 1999) (quoting Cal. Civ. Proc. Code § 706.011). At least one district court has assigned the rights to a debtor's stock options in conjunction with any other earnings from his employer; however, in doing so, the Court did not specifically address whether the stock options were earnings. *Global Money Mgmt. v. McDonnold*, No. 06-cv-00034 BTM (WMc), 2009 WL 3352574, at *5, *8 (S.D. Cal. Oct. 15, 2009). Given the purposefully broad statutory language of § 706.011 and the catch-all "or otherwise" to describe the denomination of compensation, California intends to include all remuneration, regardless of its form, for "personal services performed by an employee." Cal. Civ. Proc. Code § 706.011(b).

Here, Najafi was an employee of InvenSense in Sunnyvale, California beginning in December 2009. Dkt. No. 131 at 3. He was awarded an option to exercise up to 100,000 shares of common stock on January 27, 2010. Dkt. No. 127-2 at 2. In April 2010, he transferred to a subsidiary, InvenSense Dubai. Dkt. No. 130 at 7; Dkt. No. 131 at 3. He went back to work for the California parent corporation on February 28, 2012, and worked there until his recent termination. Dkt. No. 130 at 6; Dkt. No. 127-2 at 2. The stated purpose of InvenSense's stock incentive plan is "to attract and retain the best available

personnel" and "to provide additional incentives to employees." Dkt. No. 127-1 at 2. The terms of the stock option agreement condition the exercise of the options on "continuous service," which includes work at a related entity. Dkt. No. 127-1 at 4, 6. Once continuous service has terminated, the employee must exercise the options within forty-five days. Dkt. No. 127-2 at 2. Najafi has exercised at least 2600 shares thus far. Dkt. No. 123. These facts support the finding that the stock options were compensation for personal service and that Najafi performed personal services as an employee of InvenSense. The stock options should therefore be treated as earnings under § 706.011.

### 1. Garnishment of Stock Options Must Be After Taxes Are Withheld.

Wage garnishment is limited to "disposable earnings." Cal. Civ. Proc. Code § 706.050(a). California Civil Procedure Code § 706.011(a) defines "disposable earnings" as "the portion of an individual's earnings that remains after deducting all amounts required to be withheld by law." The statute does not define "all amounts required to be withheld by law," however. But a wage garnishment order is issued to employers, who withhold income tax from an employee's paycheck, among other taxes. Cal. Civ. Proc. Code § 706.101. Moreover, Article 10 of the Stock Option agreement states that "[t]he Grantee may incur tax liability as a result of the Grantee's purchase or disposition of the Shares." Dkt. No. 127-1 at 24. "No shares will be delivered to the Grantee or other person pursuant to the exercise of the Option until the Grantee or other person has made arrangements acceptable to the Administrator for the satisfaction of applicable income tax and employment tax withholding obligations." Dkt. No. 127-1 at 22. The face of the option grant indicates that InvenSense recognizes that the stock options, like other earnings, are subject to withholding. Although the employee has more involvement in the process than in orchestrating withholding from his paycheck, the plain terms of the agreement state that the shares will not be delivered until the employee has made arrangements to pay the amounts required by law. The Court sees no difference here between a salary paid weekly, subject to income tax, and exercising the stock options, which InvenSense conditions on the employee's withholding of amounts required by law. Accordingly, any garnishment of the stock options must be made after

accounting for all the applicable tax liability.

**2.     Exemptions**

The amount of a debtor's earnings that a creditor may garnish is limited to the lesser of 25% of the debtor's disposable earnings, or the amount by which the debtor's disposable earnings exceeds forty times California's minimum hourly wage. Cal. Civ. Proc. Code § 706.050. In addition, "the portion of the judgment debtor's earnings that the judgment debtor proves is necessary for the support of the judgment debtor or the judgment debtor's family supported in whole or in part by the judgment debtor is exempt from levy." Cal. Civ. Proc. Code § 706.051(b). It is the debtor's burden to show any limitations on his ability to satisfy a money judgment. Cal. Civ. Proc. Code § 703.850(b).

Here, Najafi submits a chart of his monthly expenses and income, declaring total expenses of $20,618.86. Dkt. No. 127-4. First, the Court notes that this chart does not comply with the statute setting forth the required content of a financial statement, as the chart does not contain all of the required information. *See* Cal. Civ. Proc. Code §§ 706.124, 703.530. In particular, Najafi claims that he spends $2,200 per month on his parents, but does not include their income, earnings, or assets as required under § 703.530. In his response to Injazat's motion to enforce the money judgment, Najafi declared that his parents received $1000 per month in Social Security benefits. Dkt. No. 87-1 at 2. In his most recent motion, Najafi represents that his parents "have no other means of support, and their own mortgage payment of about $1900." Dkt. No. 127 at 8. The Court is sympathetic to Najafi's desire to help his parents, but in light of the inconsistent and incomplete information regarding his parents' finances, the Court cannot conclude that his monthly $2,200 payment to them is reasonable.

Furthermore, Najafi lists his alimony payments to his former spouse as $4,700 per month. The operative divorce decree states, however, that as of January 1, 2011, the alimony payments are $4,000 per month. Dkt. No. 135 at 7. Accordingly, the Court finds that only $4,000 in payments to Najafi's former spouse is reasonable.

Other expenses, such as $550.00 per month on travel and entertainment, $200.00 per

month on clothing, $250.00 per month on landscaping, and $135.00 per month on pool maintenance must be scaled back in light of Najafi's current financial circumstances and outstanding debts. Najafi also purports to spend $600.00 on food per month, and while food is a basic necessity, as far as the Court can tell, Najafi lives alone. Considering all the relevant factors, Najafi's debt, income, and necessities, the Court finds it appropriate to allow exemptions of $350.00 per month on travel and entertainment, $100.00 per month on clothing, and $400.00 per month on food. The Court will not allow exemptions for landscaping or pool maintenance, which the Court finds are unnecessary expenses in light of the fact that Najafi is no longer renting the Los Altos Hills property. Therefore, Najafi's total exemption will be a deduction of $16,833.86 in monthly expenses from the after-tax value of any exercised stock options, before Injazat calculates its 25% garnishment[1].

**B.   Rental Proceeds**

Earlier in this proceeding, Najafi rented the Los Altos Hills property and received approximately $18,111 in proceeds from the rental. Those proceeds are in a trust account. At the last hearing, the Court ordered Najafi to provide notice to any interested parties— such as his other creditors—that the Court was considering assigning the rental proceeds to Injazat to satisfy this money judgment. Only one party responded: Najafi's former spouse. Shahrzad Najafi states that Najafi owes her $32,000 in unpaid alimony payments through August 31, 2013 pursuant to their divorce decree. Dkt. No. 135 at 3. She declares that Najafi promised to pay her the $18,111 from the rental proceeds towards the unpaid alimony. *Id.* at 3. She also states that the divorce decree was filed on December 21, 2010, and therefore that she has priority over Injazat's later-acquired judgment. *Id.* at 4. Injazat was awarded its judgment on May 4, 2012. Dkt. No. 65.

Both Mrs. Najafi and Injazat hold money judgments against Najafi. Cal. Civ. Proc.

---

[1] The Court notes that although it has not been presented with an estimated value of any exercisable stock options, unless the stock options are near valueless, 25% of the value of exercised stock options will be less than the amount that Najafi's disposable earnings exceeds forty times California's minimum hourly wage, which is presently eight dollars per hour.

Case No. 11-cv-04133 PJH (NC)
ORDER RE: MOTION TO ENFORCE      9
JUDGMENT

Code §§ 680.230, 680.270.  Mrs. Najafi's money judgment is first in time, as her divorce decree was filed in 2010 and Injazat was awarded its judgment in 2012.  Both money judgments are enforceable against Najafi's rental income by a writ of execution and subsequent turnover order.  Cal. Civ. Proc. Code §§ 690.010, 699.510(b), 699.040; Cal. Fam. Code § 290.  In California, a writ of execution for support orders issues as a matter of right, and a court must give priority to writs of execution on orders or judgments for child support and spousal support.  Cal. Fam. Code § 5100; Cal. Civ. Proc. Code § 699.510(a).

Because this Court has been made aware of Mrs. Najafi's priority claim against the Los Altos Hills rental property income, the Court DENIES Injazat's request to seize these funds.  In its joint status update of July 3, 2013, Najafi stated that he can no longer rent his Los Altos Hills property, as his current mortgage terms require him to reside in the home.  Dkt. No. 119.  Therefore, Injazat's request to assign future rental income, ignoring the fact that Mrs. Najafi currently maintains a priority interest, is DENIED as moot.

However, Mrs. Najafi has not moved this Court to issue a turnover order in her favor, nor is it clear that this Court has jurisdiction to issue such an order in her favor.  *See* Cal. Fam. Code § 200 ("The superior court has jurisdiction in proceedings under [the family] code").  Mrs. Najafi may wish to contact the Legal Help Center, which provides information and limited-scope legal advice to pro se litigants in civil cases.  The Legal Help Center requires an appointment, which can be made by calling (415) 782-8982.

Until a court issues a further order in connection with the funds held in trust, the Los Altos Hills rental income should remain in trust.

**C.   Restraining Order**

Finally, Injazat requests a restraining order preventing Najafi from disposing of future rental income or stock option proceeds.  Because Najafi is no longer seeking to rent his property and is no longer employed and therefore will receive no additional stock options, Injazat's request is DENIED as moot.

## IV. CONCLUSION

If Najafi exercised his stock options, Injazat is entitled to garnish 25% of the value of any exercised stock options as earnings, after deducting tax liability and $16,833.86, which represents Najafi's reasonable expenses. The Court DENIES Injazat's request to seize the $18,111 of rental proceeds from the Los Altos Hills property and those funds are to remain in trust. The Court DENIES as moot Injazat's request to assign future rental proceeds and for a restraining order against disposing of future rental proceeds or stock option income.

Finally, at the end of the most recent hearing, the parties expressed new interest in mediating this action. The parties may raise that issue with Judge Hamilton.

Any party may object to this order within fourteen days. Fed. R. Civ. P. 72(a). This order resolves Dkt. Nos. 86 and 127.

IT IS SO ORDERED.

Date: September 17, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge